

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00219-CV

**IN THE INTEREST OF A.M.C.** and A.R.C., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA00064
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Irene Rios, Justice

Delivered and Filed:  July 18, 2018

AFFIRMED

Mauro C. appeals the trial court's order terminating his parental rights to his daughters A.M.C. and A.R.C.[1]  Mauro asserts the evidence is legally and factually insufficient to support the trial court's predicate findings for terminating his rights.  We affirm the trial court's order.

## BACKGROUND

On January 12, 2017, the Texas Department of Family and Protective Services filed a petition to terminate Mauro's parental rights to A.M.C. and A.R.C.  On the date the petition was filed, A.M.C., who was born in August of 2015, was approximately one-and-a-half years old, and

---

[1] The trial court's order and appellant's brief refer to the father as Mauro.  The record contains other references to the father by the name Maurio.

A.R.C., who was born in July of 2016, was six months old. A bench trial was held on March 28, 2018.

Sonya Gilmore was the Department's caseworker from January of 2017 to October of 2017. Gilmore testified the case was initially started as a family-based case in November of 2015, after the children's mother, Samantha V., admitted to using marijuana while she was pregnant. Samantha was fourteen-years-old at that time. The Department filed the petition to terminate parental rights in January of 2017 because "Samantha would run away." Although Samantha was instructed by the Department to stay at one location, "she would leave and just not have a safe and stable place for the children." Gilmore testified she did not have any concerns about domestic violence initially; however, in July of 2017, Mauro was arrested for pulling a knife on Samantha.

Gilmore testified she reviewed the service plan with Mauro in February of 2017 and believed he understood the requirements. Gilmore stated Mauro has mental capacity issues so she contacted his DARS (Department of Assistance and Rehabilitative Services) worker. The DARS worker informed Gilmore that Mauro was in counseling and some services were being provided to him. Gilmore testified the Department was willing to consider his existing counseling to satisfy his service plan requirements; however, Mauro "did not continue to follow through with DARS [in] receiving that counseling." Gilmore testified Mauro did not try to engage in individual therapy until September of 2017, and did not undertake a psychological assessment while Gilmore was the caseworker. Gilmore stated the results from the psychological evaluation would have allowed her to tailor Mauro's service plan to accommodate his mental capacity issues. Gilmore believed Mauro understood his service plan because he acknowledged that he needed counseling based on his inability to manage his anger issues. In addition to maintaining contact with Mauro's DARS worker, Gilmore also met with Mauro's parents because they provided him with transportation "because he is not able to catch the bus. He doesn't have the capacity to know where to get on

and off." Gilmore testified she had concerns about Mauro's ability to provide safety and stability for the children because his involvement is "more of a child's play mentality, not as a parent." Gilmore stated Mauro did not demonstrate an ability to fully care for the children 24 hours a day and provide for their needs.

Sam Thomas was the caseworker assigned to the case from November of 2017 through the middle of February, 2018. Thomas referred Mauro for a psychological evaluation in January of 2018, and Mauro finally went for the evaluation on February 19, 2018. Thomas testified this was the first time Mauro engaged in services, and he re-referred him for individual counseling at that time. Thomas stated he recently received the reports from the psychological evaluation and Mauro was diagnosed with moderate intellectual disability, alcohol use disorder, cannabis disorder, severe bipolar disorder with a psychosis, and intermittent explosive disorder. The evaluation also showed Mauro has an IQ of 68. Thomas testified he had concerns about Mauro's long-term ability to care for the children, noting the evaluation recommended he engage in counseling and long-term psychiatric outpatient treatment. Thomas stated Mauro had not followed the recommendations because he was incarcerated at the time Thomas received the report. Thomas testified Samantha reported Mauro had anger issues, and the counseling was necessary to address those issues. Thomas also testified Mauro is not in a position to take care of the children alone because of his anger issues. Thomas further testified that Mauro's psychological assessment stated he would need help raising the children and would need a family member or someone to help him take care of the children.

After hearing the evidence, the trial court signed an order terminating Mauro's parental rights. Mauro appeals.

**STANDARD OF REVIEW AND STATUTORY REQUIREMENTS**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a) (West Supp. 2017); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The Department may also seek to terminate parental rights pursuant to section 161.003(a) of the Code by proving the following by clear and convincing evidence:

> (1) the parent has a mental or emotional illness or a mental deficiency that renders the parent unable to provide for the physical, emotional, and mental needs of the child;
>
> (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render the parent unable to provide for the child's needs until the 18th birthday of the child;
>
> (3) the department has been the temporary or sole managing conservator of the child of the parent for at least six months preceding the date of the hearing on the termination held in accordance with Subsection (c);
>
> (4) the department has made reasonable efforts to return the child to the parent; and
>
> (5) the termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.003(a). In this case, the trial court found sufficient evidence to terminate under section 161.003(a) and on three predicate grounds under section 161.001(b)(1).

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

**SECTION 161.003(a)**

With regard to the trial court's findings under section 161.003(a), Mauro only challenges the sufficiency of the evidence to support the trial court's first two findings that: (1) he has a mental or emotional illness or a mental deficiency that renders him unable to provide for the physical, emotional, and mental needs of the children; and (2) the illness or deficiency, in all reasonable probability, proved by clear and convincing evidence, will continue to render him unable to provide for the children's needs until their 18th birthday. To support termination under section 161.003(a), "[t]here must be evidence to support a determination that [Mauro's] mental illness or deficiency excludes [him] from providing for [his] children now and in the future." *In re B.J.C.*, 495 S.W.3d 29, 36 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "'In all reasonable probability' does not mean beyond a reasonable doubt and does not require 'scientific certainty' that the parent's mental illness will continue until the child is 18." *Liu v. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

In this case, Thomas testified Mauro has a mental illness or deficiency, listing the diagnoses from the psychological evaluation. Thomas also testified Mauro has an IQ of 68, and Gilmore testified Mauro did not have the mental capacity to provide his own transportation. Thomas further testified the psychological evaluation stated Mauro could not care for the children without assistance; therefore, the evidence established Mauro's mental illness or deficiency renders him unable to provide for the children's needs. In addition, the psychological evaluation recommended long-term outpatient treatment for Mauro establishing in reasonable probability Mauro's illness or deficiency will render him unable to provide for the children's needs until their 18th birthday. Because Mauro did not engage in services until one month before trial, the evidence does not demonstrate that he could "progress and show that [he] can independently parent [the] children or obtain the assistance of a responsible adult." *See In re B.J.C.*, 495 S.W.3d at 37-38 (holding

evidence supported termination under section 161.003 when evidence showed mother was incapable of parenting her children without assistance and mother failed to progress). Having reviewed the record as a whole, we hold the evidence is legally and factually sufficient to support the trial court's findings under section 161.003 (a)(1)-(2).

### SECTION 161.001(b)(1)

Because we hold the evidence is sufficient to support Mauro's termination under section 161.003(a), we need not address the trial court's findings under section 161.001(b)(1). *See In re A.V.*, 113 S.W.3d at 362 (providing only one predicate ground required for termination). We note, however, that one of the findings was that Mauro engaged in conduct or placed the children with people who engaged in conduct that endangered their physical and emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The evidence at trial established Mauro had anger issues that prevented him from caring for the children and eventually led to his arrest for pulling a knife on Samantha. *See In re S.M.*, 389 S.W.3d 483, 491 (Tex. App.—El Paso 2012, no pet.) (noting "statute does not require that conduct be directed at a child or cause actual harm"); *In re J.G.K.*, No. 02-10-00188-CV, 2011 WL 2518800, at *40 (Tex. App.—Fort Worth June 23, 2011, no pet.) (holding mother's inability to control her anger supported finding that she endangered child's emotional or physical well-being); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Domestic violence, want of self[-]control, and propensity for violence may be considered as evidence of endangerment."). In addition, the trial court found Mauro had not completed his service plan, and the evidence established Mauro did not undertake any services on his plan until he underwent a psychological evaluation approximately one month before trial. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

## CONCLUSION

The trial court's order is affirmed.

Irene Rios, Justice